## PRESTON v. EQUITY SAV. BANK et al.

Court of Appeals of District of Columbia.

Submitted November 8, 1927. Decided December 5, 1927.

No. 4546.

1. Banks and banking ☞117—Bank held not bound by receipts signed by officer falsely showing bank received stock to be held as collateral for personal loan to officer.

One lending money to vice president of bank, taking promissory note under agreement that shares of bank stock were held as collateral, *held* not entitled to such stock as against bank, after borrower absconded with funds of bank, under theory that it was held in trust, where borrower did not, in fact, deliver any shares to lender as collateral, since lender in such case did not ever come into actual or constructive possession of such shares, notwithstanding borrower signed receipts showing stock was held as collateral.

2. Liens ☞22—Absconding bank officer held, under evidence, without stock subject to equitable lien for debt.

Vice president of bank, who absconded, *held*, under evidence, to have no stock chargeable with equitable lien for protection of one who had loaned him money, where his stock at time of loan was held by another bank as collateral, and on defalcation he assigned all his assets to bank of which he was officer, to be applied on his indebtedness to it, after which bank's liquidators paid his debt to bank holding stock as collateral, and recovered stock, which they applied on defalcation.

Appeal from the Supreme Court of the District of Columbia.

Suit by Jennie E. Preston, administratrix of the estate of George S. Preston, deceased, against the Equity Savings Bank and others. Decree for defendants, and plaintiff appeals. Affirmed.

C. H. Merillat, of Washington, D. C., for appellant.

J. D. Eason, Jr., and Le Roy Pumphrey, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. Appellant, as administratrix of the estate of George S. Preston, deceased, filed a bill of complaint in the lower court, alleging that in the year 1918 one George R. Perry was a large stockholder in the Equity Savings Bank, a corporation doing a banking business in the District of Columbia, and was its vice president, having sole active charge of its affairs; that on February 1, 1918, the deceased, Preston, loaned the sum of $350 to Perry, taking his promissory note for that amount, together with collateral consisting of certain 25 shares of the capital stock of the Equity Bank; and that thereupon Preston delivered the shares into the possession and custody of the bank, and was given a receipt for them reading as follows, to wit:

"Received from Mr. G. S. Preston, to be held for him subject to his order, twenty-five shares of Equity Savings Bank stock held by him as collateral of G. R. Perry on his note to G. S. Preston for $350.00, dated February 1, 1918, for one year.

"Feb. 1/18.

"Equity Savings Bank,
　　　　"By G. R. Perry, V. Pres."

The administratrix further alleged that on April 30, 1918, Preston loaned the sum of $400 to Perry, receiving his promissory note therefor, together with 20 other shares of stock of the same bank as collateral security for the loan, which stock also was delivered by Preston into the custody of the bank and a receipt given therefor, in a manner similar to the preceding transaction; that on August 1st of the same year Preston loaned Perry $400, receiving 40 shares of the bank stock as collateral, which were similarly delivered to the bank and receipted for; that on October 31st a loan of $425 was made by Preston to Perry, with certain other shares of Equity Bank stock as collateral, which were similarly delivered to the bank and likewise receipted for; that in the following November Perry was found to be a defaulter and absconded with funds of the bank, leaving his debts to Preston unpaid; that the bank thereupon, in violation of its trust, refused to surrender the stock aforesaid to Preston, but instead applied the same toward the payment of its claims against Perry arising from his defalcation. Wherefore the administratrix prayed for an accounting and for a recovery of the stock or of its value, in so far as required for the payment of the promissory notes aforesaid.

The defendants denied that either Preston or Perry had ever actually delivered any stock to the bank, to be held by it as security for the Preston loans or otherwise, or that the bank had in any manner become a party to the transactions in question. The lower court sustained this defense and dismissed the bill; hence this appeal.

[1] We are convinced that the decree is right. It is manifest that Preston could not have delivered the stock in question to the bank, unless he had first received it from Perry as security for the latter's promissory notes. But it is apparent from the record that, when the four loans in question were made, Perry did not in fact deliver any shares of stock to Preston as collateral, nor did Preston ever come into actual or constructive possession of any such shares, and that the receipts which were signed by Perry for the Equity Bank and delivered to Preston, purporting to acknowledge the receipt of the shares by the bank to be held by it as security for Perry's notes to Preston, were false and fraudulent. It is in evidence that the Equity Bank "had no place for safekeeping stock or valuables or other papers, and did not engage in that kind of business at all, and never attempted to do anything of that kind"; also that there was not in the bank at any time any package or envelope containing stock or other valuables belonging to Preston, or that had his name upon it. It appears, also, from the stockbook of the Equity Bank that at the times when the four loans were respectively made Perry did not have possession of such shares as are recited in the several receipts, and, moreover, no such shares were found by the liquidators of the bank when they came to close up its affairs. It is plain, therefore, that Perry secured the loans from Preston by falsely and fraudulently representing to him that he had delivered the shares in question to the bank for safe-keeping, to be held by it as security for the loans, whereas, in fact, he had made no such delivery at all. It is plain, also, that the loans were Perry's individual transactions, that the Equity Bank had no part therein, and that no other officer or stockholder of the bank had any knowledge of the transactions until they came to light after Perry had absconded. Under these circumstances the receipts signed by Perry imposed no obligation upon the bank.

[2] It is claimed, however, by the administratrix, that Perry was the owner of various other shares of Equity Bank stock when the loans were made, and also when he absconded, and that under the circumstances such shares should be charged with an equitable lien for the protection of the loans. It is claimed that these shares were sold by the

liquidators of the bank, and the proceeds applied to the payment of Perry's defalcation, after the bank's officers had been notified of the existence of this equitable lien, and that plaintiff is entitled to recover such proceeds because of that lien. This claim, however, is not supported by the record. When the loans were made, Perry owned 228 shares of Equity Bank stock; but these were in the possession of the Merchants' Bank as collateral for a debt owing by him to that bank. It is doubtful whether Perry had any other Equity stock at that time. However, when the defalcation was discovered, Perry at once assigned and transferred to the bank all of his assets, to be applied upon his indebtedness to it. Up to that time no notice of Preston's claim had been served upon the bank, or any of its officers, other than Perry. The bank's liquidators paid Perry's debt to the Merchants' Bank and recovered the 228 shares of hypothecated stock, which they applied upon Perry's defalcation. The record does not disclose that any other Equity Bank stock belonging to Perry, at the times when the loans were made or afterwards, ever came into possession of the bank or the liquidators. It is therefore unnecessary for us to consider the question whether, under the circumstances, an equitable lien would arise in favor of Preston upon other bank shares owned by Perry, had there in fact been such shares; for it is certain that upon the record the claim for an equitable lien must fail.

The decree of the lower court is affirmed, with costs.